UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL ORR,                )
                            )
        Petitioner,          )
                            )   CAUSE NO. 3:14-CV-411 PS
    vs.                     )
                            )
SUPERINTENDENT,             )
                            )
        Respondent.         )

# OPINION AND ORDER

Michael Orr, a *pro se* prisoner, filed a habeas petition pursuant to 28 U.S.C. § 2254 challenging a prison disciplinary proceeding in which he was found guilty of battery with a deadly weapon. (DE 5-4.) The charge was based on a conduct report written by Internal Affairs Officer R. Hough. Here's what it said:

> On December 15, 2012 Offender Orr, Michael 133175 did engage in a fight with another Offender. This fight involved use of weapons and both men did receive stab/slash like injuries.
>
> For additional information see *Report of Investigation 12-ISP-0242*

(DE 5-1.) A photo of the weapons that were recovered was included with the conduct report. (*Id.* at 2.) On the same date, Officer Hough also prepared a report of investigation providing further detail about the incident:

> On December 15, 2012 Offender Michael Orr 133175 was locked in a shower with another offender. During their time secured in the shower, where no other Offender was, both men suffered stab wounds.
>
> The altercation was witnessed by Officer S. Brown who saw the two men striking one another. Following the fight both men surrendered their respective weapons.

> Injuries were sustained by both men which resulted in Offender Velez requiring medical attention from MSU.
>
> FOR ADDITIONAL INFORMATION SEE CONFIDENTIAL REPORT OF INVESTIGATION 12-ISP-0242.

(DE 5-2.) Orr was originally found guilty, but he appealed, and based on a procedural error, the facility head remanded the case for a new hearing.[1] (*See* DE 5-7.)

Orr was again formally notified of the charge a couple months later. (DE 5-3.) He pled not guilty and requested the assistance of a lay advocate. (DE 5-3.) He did not request any witness statements, but did request several pieces of physical evidence: 1) information about Officer Brown's employment status; 2) any medical records from the incident; 3) transcripts of the interviews conducted by the internal affairs officer; 4) any photos that were taken; 5) surveillance video to show that Officer Brown acted unprofessionally during this incident; 6) Orr's records detailing his segregation and recreation status; and 7) a report of conduct authored by Officer Brown. (*Id.* at 1-2.) Prior to the hearing, the hearing officer obtained a statement from Officer Brown. Here is Brown's sparse account of what took place that day:

> I OFC S. Brown was asked by Offender Orr and Offender Velez to be put in the shower together. Upon [d]oing so they started fighting each other and after shook hands and hugged. Neither offender was on self rec nor the same for rec partners. They both handed me their shanks with their right hand. End of statement.

---

[1] It was determined that the hearing officer failed to properly document the reason why the hearing was continued from its original scheduled date in accordance with prison rules. (DE 5-7.)

(DE 5-4 at 4.) The hearing officer also tried to obtain the video evidence per Orr's request, but was unable to view it noting, "[s]urveillance is no longer available for this incident." (DE 5-4 at 5.)

After a postponement, a hearing was held on March 1, 2013. (DE 5-4 at 1.) Orr made the following statement in his defense: "IC 35-50-2-2 is not criminal law for battery with deadly weapon. Camera evidence in the previous [hearing] was denied to me. I'm unable to show you Officer Brown's action." (*Id.*) Based on the evidence the hearing officer found him guilty, providing the following written explanation of her decision:

> I Ofc V. Taylor attempted to hear Offender Orr on 2-27-13. However, he requested 24 hours to review evidence. Request granted. Orr also requested that Officer Brown be present at the hearing so that he can hear Officer Brown explain what he witnessed. This request is being denied. I believe that the written statement from Officer Brown is sufficient. Orr requested the seg report to establish his past recreational group status. Request denied; irrelevant. Medical records and photos are denied. Evidence is confidential and included in the confidential case file 13-ISP-0242. Transcript copy of video interview conducted by R. Hough denied; Confident[ial]. Conduct report on Offender Orr written by Officer Brown is denied; doesn't exist. Offender Orr stated that IC 35-50-2-2 is not the correct code for the charge. I believe this to be a correctable error. The correct code is IC 35-42-2-2. The camera surveillance is no longer available for this date and time. I believe the conduct report and case file 12-ISP-0242 to be clear and concise. Due to the preponderance of evidence in the case file I['] m finding Orr guilty.

(*Id.*) Orr unsuccessfully appealed to the facility head and the final reviewing authority. (DE 5-5; DE 5-6.) He then filed the present petition.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges;

(2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

As a preliminary matter, the respondent requests that certain confidential materials stemming from the internal affairs investigation be maintained under seal due to security concerns. (DE 6.) Upon review, I agree that the file contains sensitive information, the disclosure of which could be harmful to other individuals or compromise the security of the facility. *See Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994); *Wells v. Israel*, 854 F.2d 995, 999-1000 (7th Cir. 1988). Accordingly, the motion will be granted.

Turning to the merits, Orr first claims that he was denied evidence. A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357,

4

361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). The denial of evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

The record reflects that Orr requested several pieces of physical evidence at screening. (DE 5-3 at 1-2.) The hearing officer addressed each such request in her detailed written decision, and I find nothing improper about her determinations. First, Orr requested records of his recreational and segregation status to show that he should not have been put in the shower with the other inmate in the first place. (DE 5-3.) The hearing officer reasonably denied this request as irrelevant. (DE 5-4 at 2.) What seems clear from the record is that Orr and his fellow combatant asked to be put in the shower together to engage in a fight; both brought homemade knives to the party with intent on doing harm to the other. Even if prison staff made a mistake in putting the two inmates together, this would not directly undercut the evidence showing that once in the shower, Orr engaged in a brutal knife fight with the other inmate.[2]

He also complains that the video evidence was no longer available at the time of the rehearing. But given that three months passed between the date of the fight and the date of the rehearing, it is not particularly surprising that this evidence was no longer

---

[2] To the extent Orr believes this evidence might have supported a self-defense theory, self-defense is not a valid defense in the prison disciplinary context. *See Jones,* 637 F.3d at 848. Nor do the facts of this case suggest a viable claim of self-defense, since there is evidence Orr brought a knife into the shower with him.

available. And regardless of whether prison staff should have made greater efforts to preserve this evidence, Orr has not made the necessary showing of prejudice. Orr stated at screening that he wanted the camera evidence to show he had taken a shower earlier in the day, and that during the second shower with Velez, Officer Brown acted unprofessionally by failing to pat down either inmate before they entered the shower. (DE 5-3 at 2.) It's a curious complaint that Orr blames Brown for not finding the weapon that Orr himself brought in the shower. In all events, even if the camera evidence bore out these assertions, it would not have exculpated Orr from the charge. It was irrelevant whether Orr showered earlier in the day, and as stated above, even if Officer Brown acted unprofessionally, it would not undercut the evidence showing that Orr engaged in a knife fight with the other inmate when he was given the opportunity.

Orr also complains that a report of conduct authored by Officer Brown was never given to him; however, the record shows that no such evidence exists. (DE 5-4 at 2.) Instead, the conduct report was authored by the internal affairs investigator, and a copy was provided to Orr. (DE 5-1 at 1.) Orr may be trying to argue that Officer Brown should have been the one to write the report, but this does not state a federal due process claim under *Wolff*. At most it might constitute a violation of internal prison policy, but a violation of policy would not provide a basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (alleged violation of IDOC policy in disciplinary

6

proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law").

Orr also complains that several pieces of evidence were considered by the hearing officer, such as the medical records and photos of the other inmate's injuries, but were not disclosed to him for security reasons. (DE 1 at 12-13.) It appears Orr envisioned the case proceeding like a criminal trial, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Unlike in a criminal trial, the hearing officer was not required to produce physical evidence to support the charge, follow the formal rules of evidence, or permit Orr to confront the adverse evidence and witnesses. *Piggie*, 342 F.3d at 666 (7th Cir. 2003) (inmate had no right to cross-examine or confront adverse witnesses); *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000) (formal rules of evidence do not apply at prison disciplinary proceeding); *Rasheed-Bey*, 969 F.2d at 361 (7th Cir. 1992) (a "disciplinary board's decision is not limited to evidence presented at the hearing").

Furthermore, "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public[.]" *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). Due process does require that the confidential information bear sufficient indicia of reliability. *Whitford v. Boglino*, 63 F.3d 527, 536 (7th Cir. 1995); *Henderson*, 13 F.3d at 1077. Here, I have reviewed the confidential file, and I conclude that it contains substantial, reliable evidence of Orr's guilt. To the extent Orr

7

believes the material in the file had any exculpatory value, the hearing officer considered this evidence in reaching her decision, which is all that Orr was entitled to under *Wolff*. *See White*, 266 F.3d at 768 (prisoner's rights were not violated when evidence he claimed was exculpatory was considered by the disciplinary board, even though he was not permitted to view this evidence himself for security reasons). Accordingly, this claim is denied.

Orr's petition can also be read to challenge the sufficiency of the evidence. In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. I am permitted to overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson,* 13 F.3d at 1077. Additionally, the hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence in the record to support the finding that Orr committed battery with a deadly weapon. The record shows as follows: Orr was alone in the shower with another inmate; the two were observed fighting by a staff

member; both inmates were observed holding a weapon in their hand when they stopped fighting; both inmates had knife wounds when they were taken out of the shower; and Velez's injuries were in an area of the body where they would be difficult to self-inflict. Orr believes there are gaps in the evidence, but to be constitutionally adequate, the evidence does not have to point to only one logical conclusion. *See Hill*, 472 U.S. at 457. Nor is it my role to reweigh the evidence to make my own determination of guilt or innocence. *McPherson*, 188 F.3d at 786 Rather, the question before me is whether there is some evidence to support the determination made by the hearing officer. *See Hill*, 472 U.S. at 457. Based on the record, I cannot conclude that the hearing officer's determination was arbitrary or without evidentiary support. *See id.* (due process is satisfied as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary"); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination). Accordingly, this claim is denied.

Giving the petition liberal construction, Orr may also be claiming that he did not receive proper notice of the charge. The notice requirement is intended to permit the inmate time and opportunity to "marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. To satisfy due process, the notice must be given at least 24 hours in advance, must alert the inmate to the rule that he allegedly violated, and must summarize the

9

facts underlying the charge. *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (per curiam); *Whitford*, 63 F.3d at 534.

Here, Orr was given the conduct report accusing him of battery with a deadly weapon in violation of A-100. (DE 5-1 at 1.) The report detailed the time and date of the incident. (*Id.*) The confidential internal affairs file also reflects that Orr was interviewed by investigators. So there wasn't a surprise as to what Orr was being charged with doing. He was given nearly four months to mount a defense, as the conduct report was written in December 2012 and the rehearing was held in March 2013. Orr did in fact mount a defense and made detailed evidence requests in support of his defense, which was apparently that he and Velez should not have been permitted to shower together. It may not have been a good idea to put Orr and Velez in the shower together. But that fact doesn't give Orr a defense to the charge. If one believes Brown (and the hearing officer plainly did), Orr entered the shower armed with a knife and intent on doing harm to Velez. The fact that Officer Brown may have been negligent in allowing it to happen doesn't absolve Orr.

Although not entirely clear, Orr also appears to argue that the notice was inadequate because it contained an inaccurate reference to the Indiana battery statute.[3] This error was discovered and corrected by the hearing officer at the hearing. (*See* DE 5-1 at 1.) Orr has not identified how this minor discrepancy prejudiced him in any way.

---

[3] The conduct report incorrectly cited the Indiana battery statute as IND. CODE § 35-50-2-2 rather than IND. CODE § 35-42-2-2. (DE 5-1 at 1.) Given the similarity in the code numbers, it appears this was simply a scriveners' error.

As outlined above, he was given a copy of the conduct report which provided the date, time, and details of the incident, as well as the disciplinary code number that he was accused of violating. The record reflects that he was well aware he was accused of engaging in a knife fight with Velez on the date in question, and he did in fact mount a defense to the charge. At the hearing he did not deny being in the shower, nor did he expressly deny having fought with Velez; instead, he sought to blame prison staff for allowing them to shower together. (DE 5-4 at 1.) He has not identified anything he would have done differently if the notice had contained a different statutory citation. To the extent he is claiming that IDOC polices were violated in connection with the notice, this would not provide a basis for granting him federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Hester*, 966 F. Supp. at 775.

Orr also appears to claim that the hearing officer's written decision was inadequate. The written statement requirement was intended to ensure "administrative accountability and meaningful review," but it is "not onerous." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). To satisfy due process, "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* Furthermore, "the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides[.]" *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987).

Here, the hearing officer's written decision fully outlined the evidence relied on and the basis of her decision. This was not a factually complex case, and it is clear from her written decision that the hearing officer decided to credit Officer Brown's account of what occurred. "As there is no mystery about [the hearing officer's] reasoning process," the statement was constitutionally adequate. *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987); *see also Culbert*, 834 F.2d at 631 (although written statement merely referred to conduct report as basis of guilty finding, "nothing more is constitutionally required where the only issue presented at the hearing involved an assessment of the relative credibility of the conduct report and the plaintiff's account of the incident").

Finally, Orr appears to claim that there were errors during the administrative appeal process. However, appeal rights are not one of the rights enumerated in *Wolff,* and I cannot require additional due process protections beyond those specified in *Wolff. See Sanchez v. Miller*, 792 F.2d 694, 702 (7th Cir. 1986) (observing that *Wolff* "sets forth specific minimum procedures and expressly leaves the development of additional safeguards to the discretion of the prison authorities").

For these reasons, the respondent's motion to maintain documents under seal (DE 6) is **GRANTED**. The petition (DE 1) is **DENIED**.

**SO ORDERED**.

ENTERED: August 29, 2014

s/ Philip P. Simon  
Philip P. Simon, Chief Judge  
United States District Court